### A. L. WHITE v. C. & G. COOPER CO.

FACTS CONSTITUTING VALID CONTRACT OF SALE OF CORPORATE STOCK.

C agreed in writing to sell and transfer to W, at their face value, 150 shares, of $100 each, of the capital stock of a corporation of which he was a member, and owner of the shares. for the consideration of $15,000 to be paid with interest at 3 per cent per annum payable annually from March 1, 1895, from and out of the dividends and earnings of said stock, as the same were realized; W to have the right to make payments from other sources as he might see fit.

Said stock to be issued in the name of W, he immediately, by indorsement, to transfer it to C, as security for the payment of said $15,000 and interest. W having the right and option to redeem said stock as fast as he would make payments upon the principal and interest to the amount of $500 or any multiple thereof, and have possession of a corresponding amount of said stock.

Under the agreement, 150 shares of stock were issued in the name of W and delivered to him, and by him indorsed and delivered to C. C received the annual dividends and credited them as payments on said stock. W attended meetings of stockholders and directors and voted the 150 shares of stock with the knowledge and without objection from C. C four years after said agreement was made and performed as above shown, in writing notified W and the company, of his rescission of said agreement; W not consenting thereto, *Held:*

First. Such contract is not void for want of consideration or lack of mutuality.

Second. The facts and circumstances above stated show an executed contract, and could not be rescinded at the option of one of the parties without the other's consent.

Third. A sale of stock in a corporation as above found is a valid sale, and vests the purchaser with a good title to said stock.

Knox County.

APPEAL from Knox common pleas court.

**L. B. Houck, F. V. Owen** and **C. E. Burr,** for plaintiff:

There is a fatal defect of parties. *Smetters* v. *Rainey,* 14 Ohio St. 287; *Jones* v. *Marsh,* 30 Ohio St. 20; *Burke* v. *Taylor,* 45 Ohio St. 444 [15 N. E. Rep. 471]; *Sturges* v. *Longworth,* 1 Ohio St. 544; *Buckingham* v. *Bank,* 21 Ohio St. 131; *Veach* v. *Kerr,* 41 Ohio St. 179; *Page* v. *McConville,* 6 Circ. Dec. 631 (10 R. 316); *Page* v. *Pogue,* 57 Ohio St. 633 [50 N. E. Rep. 1132].

Failure of proof. Williams, Executors 1180, 1182.

The obligations of the contract were mutual and certain. 1 Beach, Mod. L. Cont. Sec. 73; *Greenough* v. *Smead,* 3 Ohio St. 415; *Lewis* v. *Tipton,* 10 Ohio St. 88 [75 Am. Dec. 490]; *German Fire Ins. Co.* v. *Roost,* 55 Ohio St. 581 [45 N. E. Rep. 1097; 36 L. R. A. 236; 60 Am. St. Rep. 711]; *Ashland Mut. Fire Ins. Co.* v. *Housinger,* 10 Ohio St. 10; *Nowlin* v. *Pyne,* 40 Iowa 166, 168; *Newmarket Mfg. Co.* v. *Coon,* 150 Mass. 566 [23 N. E. Rep. 380]; *Lewis* v. *Insurance Co.* 61 Mo. 534; *Minneapolis Mill Co.* v. *Goodnow,* 40 Minn. 497 [42 N. W. Rep. 356; 4 L. R. A. 202]; *McCartney* v. *Glassford,* 1 Wash. 579 [20 Pac. Rep. 423]; *Ohio College of Dental Sur.* v. *Rosenthal,* 45 Ohio St. 183 [12 N. E. Rep. 665]; *Mosier* v. *Parry,* 60 Ohio St. 388 [54 N. E. Rep. 364]; *Kinney* v. *Hamilton Co. (Comrs.)* 4 Circ. Dec. 448 (8 R. 433); *Nunez* v. *Dautel,* 86 U. S. (19 Wall.) 560 [22 L. Ed. 161]; *Cota* v. *Buck,* 48 Mass. (7 Metc.) 588 [41 Am. Dec. 464]; *Gardner* v. *Barger,* 51 Tenn. (4 Heisk.) 668; *Palmer* v. *Hummer,* 10 Kan. 464 [15 Am. Rep. 353]; *Jones* v. *Eisler,* 3 Kan. 128; *Scott* v. *Lord Ebury,* L. R. 2 C. P. 225.

The transfer of title was completed before suit. Objections to the agreement are therefore remote. *Warner* v. *Porter,* 13 Dec. Re. 77 (2 Disn. 124); *Burt* v. *Dutcher,* 34 N. Y. 493; *Arkansas Valley L. & Cattle Co.* v. *Mann,* 130 U. S. 69 [9 Sup. Ct. Rep. 458; 32 L. Ed. 854]; *Beardsley* v. *Beardsley,* 138 U. S. 262 [11 Sup. Ct. Rep. 318; 34 L. Ed. 928]; *Riddle* v. *Varnum,* 37 Mass. (20 Pick.) 280; *Foster* v. *Ropes,* 111 Mass. 10; *Byles* v. *Colier,* 54 Mich. 1 [19 N. W. Rep. 565]; *Boswell* v. *Green,* 25 N. J. Law 390; *Barrow* v. *Window,* 71 Ill. 214; *Dean* v. *Nelson,* 77 U. S. (10 Wall.) 158 [19 L. Ed. 926]; *Dorsey* v. *Packwood,* 53 U. S. (12 How.) 126 [13 L. Ed. 921]; *Bunn* v. *Winthrop,* 1 John. Ch. 329; Delamater, In re, 1 Whart. 362; Bishop, Contracts Sec. 81; Story, Eq. Jurisp. (13 ed.) Sec. 793a.

A pledgee is not permitted to assert title to the thing pledged. *Benjamin* v. *Gill,* 45 Ga. 110; *Willison* v. *Watkins,* 28 U. S. (3 Pet.) 43 [7 L. Ed. 596]; Pomeroy, Rem. & Rem. Rights Sec. 751; *Abbott* v.

*Foote,* 146 Mass. 333 [15 N. E. Rep. 773; 4 Am. St. Rep. 314]; *Irby* v. *Kitchell,* 42 Ala. 438; *Johnson* v. *Gunter,* 69 Ky. (6 Bush.) 534; *First Nat. Bank.* v. *Wire & Iron Works,* 58 Mich. 124 [55 Am. Rep. 660]; *Dawson* v. *Mayall,* 45 Minn. 408 [48 N. W. Rep. 12]; *Tagg* v. *Bowman,* 99 Pa. St. 376; Bigelow, Estoppel (5 ed.) 535.

**Kelley & Follet, McIntire & McIntire, Weight & Moore** and **J. W. Warrington,** for defendant.

**VOORHEES, J.**

Plaintiff's action against the defendant company is to recover the sum of $1,800, dividends due him for the years, 1899 and 1900, declared by the company on 150 shares of capital stock in said company, owned by him.

Defendant filed an interpleader alleging that one Charles Cooper, in his lifetime claimed to be the owner of said 150 shares of stock, and the dividends thereon belonged to him, and not to the plaintiff; and since his, Cooper's death, his executors claim the stock and the dividends.

Cooper's executors appeared in said action and filed their answer, setting up two defenses:

First, a denial of plaintiff's title or ownership of said stock and of his right to the dividends, alleging that Cooper, their testator, in his lifetime, and they, as his executors, were the owners of the 150 shares of stock and were entitled to the dividends; and also a second defense, that the only claim plaintiff has to said stock arises out of a contract made by him with said Charles Cooper in his lifetime, which contract is made part of said second defense, and is in words and figures following, to wit:

"Mount Vernon, Ohio, February 26, 1895.

"This memorandum agreement witnesseth that Charles Cooper, of Mount Vernon, Ohio, upon the consideration hereinafter named, hereby sells and agrees to transfer and convey to A. L. White, of the same place, one hundred and fifty shares of one hundred dollars each of the capital stock for the C. & G. Cooper Company, a corporation, for the consideration of fifteen thousand dollars ($15,000) to him to be paid by the said A. L. White, together with interest thereon at the rate of three per cent per annum from the first day of March, 1895, payable annually.

"The said fifteen thousand dollars ($15,000) with interest thereon

as aforesaid is to be paid by the said White to the said Cooper, his heirs or assigns from and out of the dividends and earnings of said stock as fast as the same is realized; that is, all the dividends and earnings of said stock as fast as realized is to be applied first to the payment of the interest upon said $15,000, or the unpaid portion thereof, and second to the payment of the principal thereof until the whole has been fully paid; the said White having the right however to make payments from other sources as rapidly as he may see fit.

"Said stock shall be issued in the name of said White in blocks of five or ten shares at the option of said White, and shall immediately be assigned and transferred by a proper assignment in writing to the said Cooper, indorsed upon said certificate, and said certificate shall at the same time be delivered to the said Cooper as surety for the payment of said sum with interest as aforesaid. It is agreed however, that as fast as the said White makes payment upon the principal of said debt, (after having paid all interest upon the whole) amounting to $500 or any multiple thereof, he shall have the right and option to redeem and have possession of a corresponding amount of said stock.

                        "(Signed)      G. Cooper,

                                   "A. L. White."

The executors further allege that said contract is without consideration; that the plaintiff did not pay or agree to pay anything for the stock and the dividends belong to them as such executors.

It is further alleged that Cooper in his lifetime intended to, and did, rescind said contract; that notice in writing of the rescission and intention to rescind was served upon plaintiff, White, also upon the company. The executors ask that the petition be dismissed; that the defendant company be ordered to transfer to them said 150 shares of stock, and pay to them the dividends that may be thereafter declared.

To this answer or cross petition, the plaintiff answers. He admits the contract and the notice of intention to rescind and denies all the other allegations of the cross petition, and by way of affirmative allegations, in substance says: That at the time of the transfer of said stock to him, he was superintendent of the defendant company's shops located at Mount Vernon, Ohio, and had been since 1888; that he had been in the employ of the C. Cooper Company, prior to its incorporation, in various capacities since 1875; when it was reorganized into a corporation in 1895, he was one of the incorporators holding one share of the stock; that in consideration of these facts, and for his long services to the company, and for services to be rendered, and as an in-

ducement to make him personally interested in the success of the company, Charles Cooper sold, assigned, and transferred the stock in question to him, and upon the terms set out in said written contract; that thereupon the stock, 150 shares, was transferred to him on the books of the company, known as block numbered three, and was assigned to him in his name; that in pursuance of the agreement, the stock was immediately assigned and delivered to Cooper, as collateral security for the payment of the stock, and the interest, and is still held by the executors as such collateral security. He, plaintiff, was afterwards elected one of the directors. That he was recognized as a stockholder; voted the 150 shares of stock with the knowledge and without objection from Mr. Cooper; that he received the dividends which were indorsed upon the contract and receipted for by Mr. Cooper as payments on the stock and interest as per the terms of said written contract.

The executors by a reply put in issue the affirmative allegations of plaintiff's answer.

The cause comes to this court on appeal from the common pleas and is submitted on the pleadings and evidence.

The plaintiff's right to recover is denied on two grounds:

First. Want of consideration.

Second. The contract is an executory one; Cooper could, at his option, and in fact did, rescind the same.

Upon the issues presented, we find from the testimony and exhibits the following facts:

Prior to January 15, 1895, the C. & G. Cooper Company, was a copartnership of which Mr. Cooper was a member; the plaintiff became an employe of the company as early as 1875, when he was about fourteen years of age, first as an office and errand boy, and remained in its employ until 1895, when the partnership was merged into a corporation under the laws of West Virginia; Mr. Charles Cooper subscribed for, and became the owner of, 613 shares of the capital stock; one share of stock stood in the name of the plaintiff, A. L. White. The first meeting of stockholders under the new organization was held February 21, 1895. On February 25, 1895, Mr. Charles Cooper and Mr. A. L. White made the contract in question; they were and had been on friendly and intimate terms from 1875. Mr. White had occupied various positions from office boy to superintendent, continuing as an employe until 1900. Mr. Cooper was at the works every day or substantially so, and while not looking into the books or details of the business, he took an active part about the shops until a short time before his death.

Knox County.

At the organization of the corporation Mr. White was elected a director, and continued in office until he left the company in 1900. He attended the meetings of the directors and stockholders, voting the 150 shares of stock at the meetings where Mr. Cooper as the president of the company was present, taking part in the proceedings.

No certificates of stock were actually issued to the stockholders until September, 1895; on the twenty-seventh of that month the certificate for 150 shares was issued to White, and he receipted for the same on the stub. The transaction, briefly stated, as to the issuing of this certificate, as given in the testimony of Mr. Kirk is this:

The certificate was filled out in the name of Mr. White and delivered to him with an indorsement thereon signed by Mr. White as follows:

"These shares of stock are delivered to Charles Cooper, to be held as a collateral to a contract made by Charles Cooper and A. L. White dated February 25, 1895, and are to be held so until the provisions of said contract are fully carried out. Dated September 28, 1895."

Immediately thereafter the certificate of stock was delivered to Mr. Cooper by White.

Thereafter annual dividends were declared on the stock. The dividends were credited to Mr. White and then turned over to Mr. Cooper. After the dividends were so declared and delivered to Mr. Cooper he indorsed upon the contract the credits; one of such indorsements will be sufficient for the purposes of this opinion, which reads as follows:

"Received of A. L. White, $450, being interest $375 up to July 21, 1896, and $75 to apply on principal this February 4, 1896.

"(Signed)     C. COOPER."

It is claimed that by reason of the written rescission of the contract by Mr. Cooper, the contract was rescinded and this stock reverted back to Mr. Cooper.

From these facts it is contended by the executors of Charles Cooper's estate:

First. That the contract of February 26, 1895, is not a valid binding contract on the part of Mr. Cooper in favor of the plaintiff, for the reason that it is without consideration; that White does not bind himself or promise to do anything; that the offer Mr. Cooper made to transfer the stock was a mere gratuity, or a mere option to Mr. White that, if he would comply with the contract, and no change or

withdrawal of the option by Mr. Cooper before complied with by White, the stock would belong to him; that it was at best an executory contract, and being without consideration could, at any time Mr. Cooper saw proper, be rescinded.

Is the contract without consideration?

Business relations and circumstances as they existed between these parties at the time the contract was entered into are material. Mr. White had been in the employ of the company before it was incorporated for many years; he was a skilled employe, and when the company reorganized he was induced to take one share of stock, in order to become an incorporator; and to secure his personal interest and concern in the enterprise, Mr. Cooper proposed to him to sell him 150 shares of the capital stock in the new company upon the terms and conditions set out in the written contract, which contract was fully complied with by both parties.

Valuable consideration, in the sense of the law, may consist in some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other. Any *bona fide* consideration, however slight, which works any benefit to the one party or any injury to the other, is sufficient, in which there is no element of fraud. These elements in a contract have been held sufficient to constitute a valuable consideration by our Supreme Court in *Irwin* v. *Lombard University*, 56 Ohio St. 9 [46 N. E. Rep. 63; 36 L. R. A. 239; 60 Am. St. Rep. 727]; *Robinson* v. *Boyd*, 60 Ohio St. 57 [53 N. E. Rep. 494]; *Dalrymple* v. *Wyker*, 60 Ohio St. 108 [53 N. E. Rep. 713].

Suppose there were no valuable considerations for the transfer of this stock by Cooper to White, how does it affect the transaction? If Mr. Cooper saw proper, for reasons that were sufficient to him when this new organization was completed, that he directed 150 shares of the capital stock held and owned by him should be issued in the name of White and delivered to him, and they were so issued and delivered and White accepted the same, and as a part of the transaction the contract in question was entered into, whereby from the profits he would get its value on this stock, and further desiring to help White, and to keep him with the company, secure his personal concern and interest in the enterprise, he, Cooper, was willing to enter into the contract and which contract was afterwards carried out, it would be a binding contract—one that he could not rescind at his pleasure or option.

Judge Swan in his late Treatise, at page 543, says:

"This rule should be noticed in relation to a promise without consideration, that although no suit can be brought to enforce its performance, yet if it is executed both parties are bound by it. Thus, if you promise to give me a horse, or to work for me without compensation, I cannot maintain an action against you for not fulfilling your promise, but if you deliver the gift it is mine, or if you do the work you cannot recover from me any compensation."

Mr. Cooper, for reasons of his own, was willing to have this stock issued in the name of A. L. White and delivered to him, White, to transfer it back to him by indorsement so that he, Cooper, could hold it as security for the payment of the face value of the stock, with interest at 3 per cent; both principal and interest to be paid from the profits or dividends arising from the success of the enterprise.

Upon these conditions, Mr. Cooper agreed to sell and transfer to White 150 shares of stock. The stock was so issued and delivered to White, and by him transferred back to Cooper to be held as security, etc.

This company was a corporation; the corporation through its proper officers issued its stock; 150 shares were so issued and delivered to Mr. White; he receipted for the same on the stub of the stock book. Can there be any doubt, but that this stock was actually delivered? We think not. Were the other conditions of the contract executed or carried out?

White, after receiving the certificate of stock, indorsed the same and delivered it to Mr. Cooper who received it, and held it for several years, treating it as security, as contemplated by the contract. It would be a misconception to say that it was held as security, and at the same time to be treated as belonging to Cooper and not to White. Security presupposes that the party who offers it for security is the owner; and the receiver is not the owner, but a mere holder, to secure conditions assumed by the real owner.

If this certificate had never been issued or delivered to White he would have no interest in it, and have no right at their stockholder's or director's meetings to vote 150 shares of stock in their business transactions. He did so vote the shares; Mr. Cooper knew he was so doing. In recognizing these acts of White, Mr. Cooper was recognizing him as the owner of these shares, and the existence of, and the validity of, the contract. He further recognized it by receiving the dividends and crediting White with them as payments on the stock. Mr. Cooper did everything required of him under this contract. Same is true, as we find from the evidence, on the part of Mr. White. The

White v. C. & G. Cooper Co.

transaction as a whole from first to last is consistent with this conclusion, that the contract was fully executed, on the respective parts of the parties to it, and therefore it was a valid contract between them, and Mr. Cooper could not, without the consent of Mr. White, rescind it.

Our conclusion is fully supported and in accord with the case of *Dean* v. *Nelson,* 77 U. S. (10 Wall.) 158 [19 L. Ed. 926].

It was urged by counsel for the plaintiff, Dean, in the case cited, as it is contended in this case, that there was no consideration whatever for the assignment of the stock from Pepper to Nelson, citing in support of their contention *Dorsey* v. *Packwood,* 53 U. S. (12 How.) 126 [13 L. Ed. 921]. The court, in *Dean* v. *Nelson, supra,* in meeting this contention held, "That Dean was concluded on the question of the sale of his stock. Had the transaction been merely an agreement for a sale upon the terms on which the sale was actually made, and this a bill by the vendees for a specific performance," the case could hardly be distinguished from *Dorsey* v. *Packwood, supra.* But the court say, "Here the sale was actually made and the stock was actually transferred to Nelson, so that, in the absence of fraud, it became absolutely his." In *Dorsey* v. *Packwood, supra,* it is held that an agreement whereby the purchaser of a plantation bound himself to transfer to his son-in-law one-half of the plantation, slaves, cattle, and stock as soon as this son-in-law should pay one-half of the cost of said property, either with his own private means, or with one-half of the profits of the plantation; the court held the contract lacked mutuality. The son-in-law was not bound to render any service nor pay any money. It was a *nudum pactum.* There was no conveyance made, the promisor did nothing only give his promise. Mr. Cooper did more than give his promise to sell this stock, he caused the stock to be issued to White and delivered but received it again by indorsement, and held it as security for the payment of the price for which he sold the stock.

Under the facts and the law, we think this stock belongs to Mr. White and Mr. Cooper could not rescind the contract without White's consent.

Under the contract, White is not entitled to receive or collect the dividends and appropriate them to any other use than the payment of the interest, the balance to be applied on the principal, namely, the $15,000, until it is fully paid.

The decree will be drawn in accordance with this finding of law and facts.

Knox County.

Decree for plaintiff with costs.

Affirmed by Supreme Court and on rehearing reaffirmed. **Kirk v. White,** 72 Ohio St. 615; *Kirk* v. *White,* 72 Ohio St. 691.

**Donahue** and **McCarty, JJ.,** concur.

---

## ATTACHMENT AND GARNISHMENT—JUDGMENT.